Robert A. Johnson (RJ-6553)
Christopher T. Schulten (CS-7320)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York 10022
Telephone (212) 872-1000

*Attorneys for Plaintiff*
*Getty Petroleum Marketing Inc.*



08 CV 6176



RECEIVED
JUL 07 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GETTY PETROLEUM MARKETING INC.,

    *Plaintiff,*

– against –

NEW ATLANTIS ACQUISITION I LLC,
ATLANTIS PETROLEUM, LLC, and FIRST
AMERICAN TITLE INSURANCE COMPANY,

    *Defendants.*

-------------------------------------------------------------x

08 CIV. ____

**COMPLAINT**

    Getty Petroleum Marketing Inc. ("Getty," "Plaintiff" or "Seller"), by its attorneys Akin Gump Strauss Hauer & Feld LLP, as and for its complaint against Defendants alleges as follows:

### NATURE OF ACTION

    1. This is a declaratory judgment action concerning an Agreement of Purchase and Sale and Assignment of Marketing Assets, dated February 8, 2008, as amended (the "Agreement"),[1] among Plaintiff Getty as the Seller, and Defendant Atlantis Petroleum, LLC ("Atlantis") and Defendant New Atlantis Acquisition I LLC ("New Atlantis" or "Purchaser") (collectively, the "Atlantis Defendants") as the Purchaser of certain owned properties and

---

[1] All capitalized terms used but not defined in this Complaint shall have the meanings ascribed to them in the Agreement.

leasehold interests currently operated as retail gasoline service stations in the States of New Jersey and Pennsylvania, together with certain other related assets (the "Transaction").

2.  In addition, this action names Defendant First American Title Insurance Company ("First American" or "Title Company") because, pursuant to a Joinder to the Agreement signed by First American on or about February 8, 2008 (the "Joinder"), First American is the escrow agent that holds the Earnest Money Deposit which is the subject of the instant dispute.

3.  According to the Agreement, June 30, 2008 (the "Outside Date") was the last day on which the Transaction could close; failure to close on that date triggered certain termination rights as set forth in greater detail below. While Plaintiff was ready, willing and able to close on June 30, 2008, Atlantis Defendants failed to appear at the Closing, and therefore the Transaction did not close on the Outside Date.

4.  The Atlantis Defendants failed to close on the Outside Date because they were unable to obtain financing and therefore were unable to tender the Purchase Price on the Outside Date. Furthermore, Atlantis Defendants breached a specific representation in the Agreement, section 8.2(f) (discussed in greater detail below), whereby Atlantis Defendants represented that they both *had* and as of the Closing date *would have* sufficient funds to consummate the Transaction. Consistent with this explicit representation, the Agreement contains no provision that makes closing contingent in any way upon Atlantis Defendants' ability to obtain financing.

5.  In response to both Atlantis Defendants' failure to close as of the Outside Date, and the breach of Atlantis Defendants' express representation, Plaintiff invoked the appropriate termination provisions of the Agreement, which provide, *inter alia*, that the Title Company shall release the Agreement's $3 million Earnest Money Deposit, and any interest earned thereon, to

Plaintiff as Liquidated Damages. Accordingly, Plaintiff seeks a declaration respecting the rights and obligations of the parties.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201, in that complete diversity of citizenship exists between all plaintiffs and all defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Pursuant to section 20.13 of the Agreement, the Parties submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York for all purposes under the Agreement.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

9. Getty is a corporation duly organized and existing under the laws of the State of Maryland and having a principal place of business in the State of New York.

10. Upon information and belief, Defendant Atlantis is a limited liability company existing under the laws of the State of Pennsylvania, with its principal place of business in the State of Pennsylvania.

11. Upon information and belief, Defendant New Atlantis is a joint venture between Defendant Atlantis and non-party Brentwood Capital Partners, a private equity firm operating as a Delaware limited liability company. Upon information and belief, Defendant New Atlantis was created solely for the purpose of consummating the Transaction, and is a limited liability company existing under the laws of the State of Delaware, with its principal place of business in the State of Pennsylvania.

12. Upon information and belief, Defendant First American is a corporation duly organized and existing under the laws of the State of California and having its principal place of business in the State of California.

## FACTUAL BACKGROUND

### The Agreement

13. The Agreement was entered into among Plaintiff as the Seller, Defendant New Atlantis, as the Purchaser, and Defendant Atlantis, on or about February 8, 2008.

14. The purpose of the Agreement is to transfer Plaintiff's interest in certain retail gasoline service stations in the States of New Jersey and Pennsylvania, consisting of certain owned properties and leasehold interests, together with certain other related assets, to Purchaser in exchange for the Purchase Price, as set forth in the Agreement.

15. The Agreement contains no provision stating that Atlantis Defendants' obligation to close was contingent on the Atlantis Defendants' ability to obtain financing.

16. In fact, the Atlantis Defendants represented in the Agreement both that they had sufficient funds to consumate the transaction at the time the Agreement was executed, and that they would have sufficient funds on the Closing Date. As set forth in section 8.2(f) of the Agreement, Atlantis Defendants represented that:

> (f) Purchaser and Atlantis have, and on the Closing date Purchaser and Atlantis will have, sufficient funds available to finance and consummate the transactions contemplated by this Agreement, including the payment of the Purchase Price and the satisfaction of the Assumed Liabilities.

17. Section 3.4 of the Agreement calls for an "Earnest Money Deposit" to be delivered by Defendant New Atlantis to the Title Company in the amount of $3 million, to be deposited in a federally insured, interest bearing account.

18. Upon information and belief, the Earnest Money Deposit was in fact delivered by Defendant New Atlantis to the Title Company in the amount of $3 million, and the Title Company in turn deposited it in a federally insured, interest bearing account, on or about February 8, 2008.

19. According to section 3.4 of the Agreement, in the event of a successful closing, the Earnest Money Deposit and any accrued interest would be applied against the Purchase Price.

20. Where the Seller properly invokes the Termination provisions of Article 12 of the Agreement, the Agreement requires the Title Company to release the Earnest Money Deposit and any accrued interest to the Seller as Liquidated Damages.

21. The Agreement set June 30, 2008 as the Outside Date on which closing could occur. As set forth in section 12.1 of the Agreement:

> 12.1 **Termination**. This Agreement may be terminated at any time before the Closing:
>
> *****
>
> (b) by Seller or Purchaser, by written notice to the other, if the Closing has not occurred by June 30, 2008 (or such later date mutually agreed to in writing by Seller and Purchaser), unless the party seeking termination is then in material breach of its obligations under this Agreement.

22. In addition, section 12.1(c) of the Agreement permits the Seller to terminate in the event the Purchaser breached any representation contained in the Agreement in any material respect.

23. In the event the Transaction failed to close by June 30, 2008, and the Seller duly terminated the Agreement on that basis, the Agreement set forth at section 12.3 that "the Title Company shall release the Earnest Money Deposit, and any interest earned thereon, (collectively, "Liquidated Damages") to Seller as liquidated damages . . . ."

### Plaintiff Learns that Defendant Is Having Trouble Obtaining Financing

24. In the months leading up to the Outside Date, Atlantis Defendants repeatedly declined Plaintiff's requests to set a Closing Date.

25. At no time prior to June 12, 2008 did Atlantis Defendants inform Plaintiff that the financing representation they had made in section 8.2(f) of the Agreement could no longer be relied upon.

26. At no time prior to June 12, 2008 did Atlantis Defendants inform Plaintiff that their ability to finance the Transaction was in jeopardy.

27. In reliance on Atlantis Defendants' assurances that they would close the Transaction no later than June 30, 2008, Plaintiff scheduled meetings between Defendant Atlantis and dealers operating the retail gasoline service stations that were the subject of the Transaction on June 10, 11 and 12, 2008.

28. On or about June 12, 2008, Plaintiff learned, for the first time, from a third party that Atlantis Defendants were having difficulty obtaining financing. That third party, a title company co-insuring the transaction (not Defendant First American) informed Plaintiff's counsel that one of the Atlantis Defendants' potential financing sources had instructed it to cease all work on the Transaction.

29. On or about June 13, 2008, when confronted with this information, principals of the Atlantis Defendants admitted to Plaintiff both telephonically and in person at a meeting that Defendant New Atlantis was encountering difficulty in obtaining the financing necessary to pay the Purchase Price at Closing, and that Defendant New Atlantis would not have such financing in place on or before June 30, 2008, the Outside Date.

30. The June 13, 2008 meeting is memorialized in a June 20, 2008 letter from Plaintiff to Atlantis Defendants (the "June 20 Letter").

31. In a letter dated June 23, 2008 (the "June 23 Letter"), counsel acting on behalf of the Atlantis Defendants informed Plaintiff that Atlantis Defendants still wanted to close the transaction as set forth in the Agreement, but that alleged circumstances beyond Atlantis Defendants' control were impeding their ability to do so. The June 23 letter states the following:

> [Atlantis Defendants'] goal has been, and remains, to use every effort possible to close on the acquisition of the Purchased Assets. This is so despite a series of acts and events that have arisen beyond the reasonable control of any Party since the Purchase Agreement was executed.

32. The June 23 Letter is silent as to any purported or alleged breaches of the Agreement by Plaintiff.

**The Closing**

33. On June 26, 2008, counsel acting on behalf of Plaintiff sent a letter to Atlantis Defendants (the "June 26 Letter") notifying Atlantis Defendants that the closing would occur on June 30, 2008. The June 26 letter states the following:

> You are hereby notified that the closing has been scheduled to take place at 2:00 p.m., local time, on Monday, June 30, 2008 at the offices of Akin Gump Strauss Hauer & Feld LLP . . . representatives of Seller, Seller's counsel and the Title Company will be present. At the closing Seller will tender to Purchaser, Atlantis, and the Title Company, as applicable, the closing deliveries required to be delivered by Seller under the terms of the Purchase Agreement . . . .

34. Atlantis Defendants failed to respond to the June 26 Letter prior to the Outside Date.

35. On June 30, 2008, at or about 11:00 a.m. EDT, Plaintiff's attorney received a letter from an attorney acting on behalf of Atlantis Defendants (the "Atlantis Defendants' First

June 30 Letter"). In the Atlantis Defendants' First June 30 Letter, Atlantis Defendants sought to renegotiate various terms of the Agreement.

36. On June 30, 2008, at or about 2:00 p.m. EDT, in accordance with the notice set forth in the June 26 Letter, and pursuant to the Agreement, Plaintiff, counsel for Plaintiff, a representative of the Title Company, and a court reporter, appeared at the offices of Plaintiff's counsel, Akin Gump Strauss Hauer & Feld LLP at 590 Madison Avenue, New York, New York 10022 (the "Closing").

37. Plaintiff appeared at the Closing ready, willing and able to close pursuant to the Agreement.

38. At the Closing, Plaintiff tendered all of the documents that the Agreement required Plaintiff to tender, other than those that could not be delivered due to actions or omissions of the Atlantis Defendants.

39. Neither Atlantis Defendants, nor any agent or representative of Atlantis Defendants, attended the Closing despite being duly notified in the June 26 Letter.

40. There was no agreement between the parties to postpone the Outside Date or extend the time for the Transaction to be consummated.

**Atlantis Defendants' Purported Termination**

41. After the time designated in the June 26 Letter for the commencement of the Closing, on June 30, 2008 at or about 2:11 p.m. EDT, an attorney acting on behalf of Atlantis Defendants sent a letter (the "Atlantis Defendants' Second June 30 Letter") to Plaintiff purporting to notify Plaintiff that it was in "material default" of several articles of the Agreement, and that Plaintiff had purportedly failed to meet several conditions precedent.

8

42. The Atlantis Defendants had never previously raised the allegations set forth in the Atlantis Defendants' Second June 30 Letter.

43. In the midst of the Closing, on the afternoon of June 30, 2008, at or about 4:43 p.m. EDT, an attorney acting on behalf of Atlantis Defendants sent a letter to the Title Company (the "Atlantis Defendants' Third June 30 Letter") purporting to notify the Title Company of Atlantis Defendants' purported termination of the Agreement on the grounds set forth in Atlantis Defendants' Second June 30 Letter. Atlantis Defendants' Third June 30 Letter further purported to instruct the Title Company to release the Earnest Money Deposit to Atlantis Defendants.

44. Atlantis Defendants had never notified Plaintiff of any alleged material defaults or failures of conditions precedent prior to June 30, 2008, at or about 2:11 p.m. EDT, after the stated time for the Closing.

45. Atlantis Defendants never effectively terminated the Agreement.

**Plaintiff's Proper Termination**

46. In a letter dated June 30, 2008 (the "Plaintiff's First June 30 Letter") Plaintiff notified Atlantis Defendants that Plaintiff had terminated the Agreement on the grounds that the Closing had failed to occur by the Outside Date, and because Atlantis Defendants were in material breach of a representation, warranty or covenant under the Agreement, namely the financing representation.

47. In a letter dated June 30, 2008 (the "Plaintiff's Second June 30 Letter") Plaintiff notified the Title Company that Plaintiff had terminated the Agreement, and instructed the Title Company to release the Earnest Money Deposit, and any accrued interest, to Plaintiff in accordance with the terms of section 12.3 of the Agreement.

48. As of June 30, 2008, Plaintiff was not in material breach of the Agreement.

49. An actual case or controversy exists between the parties.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 hereof as if set forth at length herein.

51. The termination provisions in Article 12 of the Agreement were triggered because the Closing did not occur before June 30, 2008.

52. The termination provisions in Article 12 of the Agreement were also triggered because Atlantis Defendants have breached their financing representation set forth in section 8.2(f) of the Agreement.

53. As of June 30, 2008, Plaintiff was not in material breach of the Agreement.

54. Atlantis Defendants never effectively terminated the Agreement pursuant to its terms.

55. Plaintiff has effectively terminated the Agreement pursuant to its terms.

56. Plaintiff is entitled to a Declaration that, for the reasons set forth above, it has effectively invoked the Agreement's termination provisions, as set forth in Article 12, and that therefore, under the Agreement, (1) Plaintiff is entitled to the $3 million Earnest Money Deposit and any accrued interest as Liquidated Damages, and (2) the Title Company shall release such Liquidated Damages to Plaintiff in accordance with the terms of the Agreement.

WHEREFORE, Plaintiff demands a declaratory judgment against Atlantis Defendants declaring that Plaintiff is entitled to the $3 million Earnest Money Deposit and any accrued interest as Liquidated Damages, as set forth in the Agreement, that the Defendant First American, as the Title Company, shall release said Liquidated Damages to Plaintiff forthwith, and for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 7, 2008

AKIN GUMP STRAUSS HAUER & FELD LLP

Robert A. Johnson (RJ-6553)
Christopher T. Schulten (CS-7320)
590 Madison Avenue
New York, New York 10022
Telephone (212) 872-1000
rajohnson@akingump.com
cschulten@akingump.com

*Attorneys for Plaintiff*
*Getty Petroleum Marketing Inc.*